UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON MICHAEL SPENCER,

       Plaintiff,

v.

DEWEY S. WATKINS, *et al.*,

       Defendants.
                               /

Case No. 1:16-cv-106

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner in the custody of the Michigan Department of Corrections (MDOC) pursuant to 42 U.S.C. § 1983. This matter is now before the Court on defendants' motion for summary judgment for lack of exhaustion (ECF No. 15). Defendants' motion is unopposed.

    **I.**    **Background**

Plaintiff's complaint named the following employees at the Ionia Correctional Facility (ICF): Corrections Officer (CO) Dewey S. Watkins; CO Martins; CO Connor; CO Stanbugh; and Sgt. Desocher. Compl. (ECF No. 1).[1] Plaintiff alleged as follows (in his words):

> On 1-24-16, Mr Watkins came to my cell door and called me a Petifile really loud so all other prison heard it and placed my life in danger. I am in fear of my life. and I have recieved many death threats from other prison. He also did not give me my breakfast and lunch for a week. Comes into my cell and destroys my legal work and personal papers. I am constantly being harassed by Mr Watkins and denies me showers, and Mr Watkins tosses my food tray in my cell floor. Mr Martins comes up to me and says I like little boys, I am constantlyharassed by Martins too, Martins also denys me food and calls me chomo/Petifile. And he also denies me toilet

---

[1] Plaintiff refers to the facility as Ionia Maximum Facility, 1576 Bluewater Hwy, Ionia, MI 48846. *See* Compl. at PageID.2.

papers, paper, ink pens, tooth power. Mr Connor also harasses me the same way, yelling out Petifile out loud putting my life in danger. Mr Stanbugh took my laundry and I never got my clothes back and he also harasses me calling me Petifile. Sargent Desocher took my radio and threw it in the garbage. Also harasses me calling me a chomo/Petifile, saying out loud that I like to rape little boys. And also denies me disbursment forms to obtain supplies.

Compl. at PageID.3.

For his relief, plaintiff wants $100,000.00 of monetary damages, punitive damages, transfer to a different correctional facility, restitution of $8,000.00, and other relief ("suspend from work the corrections officers or give them a fine"). *Id*. at PageID.4. The Court later allowed plaintiff to amend his complaint (ECF No. 4) to the extent it constituted a supplement to the request for injunctive relief. Order (ECF No. 7).

## II. Defendants' motion for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id.* at 405.

### B.     Failure to Exhaust

#### 1.     Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust

3

available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Discussion

Plaintiff filed this action on February 1, 2016, eight days after the alleged incident. *See* Comp. (ECF No. 1). According to MDOC records, plaintiff did not exhaust any grievances through Step III prior to filing his complaint. *See* MDOC Prisoner Step III Grievance Report and "Affidavit of no Step III Grievance" (ECF No. 16-1, PageID.49-50) (showing no record of a Step III grievance filed from May 2009 through October 13, 2016). Plaintiff does not contest the affidavit or report. Based on this record, plaintiff did not properly exhaust any of the claims raised in this lawsuit. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants' motion for summary judgment should be granted.

### III. Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (docket no. 15) be **GRANTED** and that this action be **TERMINATED**.

Dated: June 8, 2017  /s/ Ray Kent
RAY KENT
United States Magistrate Judge

5

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).